IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-431-FL

| | |
|---|---|
| ERGS II, L.L.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| HAROLD S. LICHTIN, and HAROLD S. ) | |
| LICHTIN FAMILY LIMITED ) | |
| PARTNERSHIP, ) | |
| ) | |
| Defendants. | |

This matter is before the court on plaintiff's motion to dismiss counterclaims and motion to strike defenses (DE # 31). Defendants responded in opposition and plaintiff replied. Following hearing on the motions, the court ordered supplemental briefing on January 15, 2013, which has been received. Also before the court is defendants' unopposed motion for extension of time (DE # 48) to complete discovery and to file a response to plaintiff's motion for summary judgment (DE # 22). In this posture these motions are ripe for ruling.

## BACKGROUND

On July 13, 2012, plaintiff brought this suit on contracts of guaranty, entered into by defendants Harold S. Lichtin and Harold S. Lichtin Family Limited Partnership, guaranteeing payment in excess of $40,000,000.00 on loans made to Lichtin/Wade, L.L.C. by Branch Banking & Trust Company, which transferred all of its interest in the loans, including the subject guaranties, to plaintiff. Plaintiff seeks to collect against the guarantors upon default of Lichtin/Wade, L.L.C.,

which has since filed for bankruptcy protection. Several appeals now are pending before the court arising from that bankruptcy proceeding.

Defendants moved for preliminary injunction on September 13, 2012, arguing that the case should be stayed pending resolution of the bankruptcy proceeding. Plaintiff swiftly responded in opposition and on the same date, filed a motion for summary judgment, asserting entitlement as a matter of law to amounts owing on the guaranties. The court denied the preliminary injunction, directing in order entered September 26, 2012, that the parties confer and develop a schedule for addressing the motion for summary judgment. The court suspended further briefing on the motion until entry of case management order.

On October 10, 2012, defendants filed an answer and counterclaims asserting two counterclaims and a defense on the basis that plaintiff's enforcement of the contracts of guaranty violates the North Carolina Consumer Economic Protection Act (the "Act").[1] In particular, defendants argue that plaintiff is a "collection agency," under the Act, and was required to secure a permit from the North Carolina Department of Insurance, and has engaged in non-permitted collection activities by filing suit. Defendants assert that they are entitled to damages for a violation of the Act (First Counterclaim), as well as a violation of the Unfair and Deceptive Trade Practices Act (Second Counterclaim), as a result of plaintiff's conduct. Defendants also assert that the Act bars the suit, as the basis for their First Affirmative Defense.

In its motion to dismiss and motion to strike filed November 5, 2012, plaintiff argues that the two counterclaims and the affirmative defense based on the Act are without merit as a matter of

---

[1] The Act amended in 2009 four Chapters of the North Carolina General Statutes covering consumer protection laws. See 2009 N.C. Session Laws 1-4 (amending § 6-21.2 (attorneys' fees in notes), § 45-21.16 (foreclosures), § 58-70-15, -70, -115, -130, -145, -155 (collection agencies) and § 75-56 (debt collectors)).

2

law because plaintiff is not the type of entity subject to the requirements of the Act. (DE #31, 32). The court sets forth further details of the arguments raised in support and opposition to the motion in the analysis below.

On January 7, 2013, the court held status conference and motions hearing, where the parties presented argument on the motion to dismiss and motion to strike. The court took these motions under advisement. On January 15, 2013, the court directed the parties to file supplemental briefing on the motion to dismiss and motion to strike, which the court has received.

With respect to the motion for summary judgment, and the parties' report and plan regarding case scheduling, the court noted at hearing that defendants requested limited discovery with respect to the issues raised in plaintiff's motion for summary judgment. The court granted defendants' request for limited discovery, requiring the parties to complete such limited discovery by March 8, 2013. Defendants were required to respond to the motion for summary judgment by April 7, 2013.

On February 28, 2013, defendants filed a motion for extension of time to complete discovery and to file a response to the motion for summary judgement. Defendants now seek until May 10, 2012 to complete discovery and until June 7, 2013 to file a response to the motion for summary judgment. In a filing made March 20, 2013, plaintiff promotes opposition to the requested time extension. Plaintiff urges defendants have not made appropriate use of the time allowed, and, moreover, that many of the discovery requests made by defendants exceed the scope of permissible discovery at this juncture in the case. Plaintiff also protests any attempt to tie the discovery schedule in this case to the bankruptcy outcome. If the court entertains the motion, however, plaintiff suggests a time extension up to and until April 8. 2013, and a deadline to respond to the motion for summary judgment of May 8, 2013.

3

# DISCUSSION

**A. Standard of Review**

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is to eliminate claims that are factually or legally insufficient. Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To survive a motion to dismiss, a pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). In evaluating whether a counterclaim is stated, "a court accepts all well-pled facts as true and construes these facts in the light most favorable" to the claimant, but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Nor must the court accept "unwarranted inferences, unreasonable conclusions, or arguments." Id.

Rule 12(f) of the Federal Rules of Civil Procedure provides, in pertinent part, that a "court may strike from a pleading an insufficient defense . . . ." Fed. R. Civ. P. 12(f). "A defense is insufficient if it is clearly invalid as a matter of law." Spell v. McDaniel, 591 F. Supp. 1090, 1112 (E.D.N.C. 1984).

**B. Analysis**

**1. Motion to Dismiss**

In their counterclaims, defendants assert that plaintiff is a "collection agency," particularly one defined as a "debt buyer" engaged in the business of buying delinquent "consumer debt" under

4

N.C. Gen. Stat. § 50-70-15(b)(4). See Counterclaims ¶¶ 19, 25, 56, 57. Defendants contend that the Act (as well as the collection agency statute which it amended) requires plaintiff to secure a permit from the North Carolina department of insurance before engaging in debt collection activities, and to refrain from non-permitted debt collection activities, including the filing of the present lawsuit. Id. ¶ 23; see N.C. Gen. Stat. § 58-70-1 to -50. Plaintiff counters in its motion to dismiss that the definition of a debt buyer is limited under the statute to an entity involved in collection of "consumer debt," as provided in N.C. Gen. Stat. § 58-70-15(a)(4), and not an entity such as itself seeking to enforce a commercial loan guaranty that it owns. See Mem. at 7; Reply at 3-5. Plaintiff argues that it is not otherwise a "collection agency" subject to the requirements of the collection agency statute. See Reply at 6-9.

As an initial matter, there is some dispute over what type of "collection agency" plaintiff is alleged to be. As noted above, defendants originally asserted specifically in their counterclaims that plaintiff is a "debt buyer" under N.C. Gen. Stat. § 58-70-15(b)(4). In their opposition, however, defendants assert that plaintiff qualifies as a "collection agency" in two other respects and not just as a "debt buyer," namely a third-party collection agency in § 15-70-15(a), and an in-house collection agency under § 15-70-15(b)(3).

Plaintiff's motion to dismiss "presents an issue of statutory construction," and as a federal court sitting in diversity, this court "is obliged to apply state law principles to resolve such a question, utilizing such principles as enunciated and applied by the state's highest court." Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co., 510 F.3d 474, 482 (4th Cir. 2007). Here, the North Carolina Supreme Court has not decided any case involving application of the definition of "debt buyer" under § 58-70-15, nor any other provision of § 58-70-15. Accordingly, this court must

5

"interpret the [statute] by applying the principles of statutory construction that would guide an [North Carolina] court in making such a decision." Id. (citing CTI/DC, Inc. v. Selective Ins. Co. of Am., 392 F.3d 114, 118 (4th Cir. 2004)).

Under North Carolina law, "[i]n matters of statutory construction, our primary task is to ensure that the purpose of the legislature, the legislative intent, is accomplished." Elec. Supply Co. of Durham, Inc. v. Swain Elec. Co., Inc., 328 N.C. 651, 656 (1991). "Legislative purpose is first ascertained from the plain words of the statute." Id. "It is an elementary rule of statutory construction that words must be given their common and ordinary meaning unless another is apparent from the context, or unless they have acquired a technical significance." Duke Power Co. v. Clayton, 274 N.C. 505, 510 (1968).

In addition, the court is "guided by the structure of the statute and certain canons of statutory construction." Elec. Supply Co., 328 N.C. at 656. For example, "statutes dealing with the same subject matter must be construed in pari materia." Id. (quoting Media, Inc. v. McDowell County, 304 N.C. 427, 430-31 (1981)). And, "[i]t is presumed that the legislature intended each portion to be given full effect and did not intend any provision to be mere surplusage." Id. (quoting Builders, Inc. v. City of Winston-Salem, 302 N.C. 550, 556 (1981)). "Courts also ascertain legislative intent from the policy objectives behind a statute's passage 'and the consequences which would follow from a construction one way or another.'" Id. (quoting Campbell v. Church, 298 N.C. 476, 484 (1979)). "A construction which operates to defeat or impair the object of the statute must be avoided if that can reasonably be done without violence to the legislative language." Id. (quoting State v. Hart, 287 N.C. 76, 80 (1975)). With these principles in mind, the court first turns to consideration of the language and structure of the statute at issue here.

6

The statutory definition of "collection agency" falls within Article 70 of Chapter 58, which regulates licensing and conduct of "collection agencies" by the North Carolina Department of Insurance. See N.C. Gen. Stat. § 58-70-1 to -90. Article 70 is divided into five parts: Part 1 ("Permit Procedures"), Part 2 ("Operating Procedures"), Part 3 ("Prohibited Practices by Collection Agencies Engaged in the Collection of Debts from Consumers"), Part 4 ("Enforcement"), and Part 5 ("Special Requirements in Actions Filed by Collection Agency Plaintiffs"). Article 70 was amended in several respects by the Act, and by another 2009 amendment, described in more detail below.

Part 1 provides in its first section that "[n]o person, firm, corporation, or association shall conduct or operate a collection agency or do a collection agency business, as the same is hereinafter defined in this Article [70], until he or it shall have secured a permit therefor as provided in this Article." § 58-70-1. Part 1 sets forth requirements for an applicant to obtain such a permit. See § 58-70-5. Part1 also includes two definition sections. The first, which was added by amendment in August 2009, defines the term "[p]erson," among other terms, "[f]or purposes of G.S § 58-70-5 and this section," as "[a]n individual, corporation, partnership, limited liability company, association, joint stock company, trust, unincorporated organization, or any similar entity or any combination of the foregoing acting in concert." § 58-70-6; see 2009 North Carolina Laws S.L. 2009-566 (H.B. 1166) (August 28, 2009).

The second definition section in Part 1, which was amended by the Act, is central to the viability of the counterclaims in this case. See § 58-70-15; 2009 North Carolina Laws S.L. 2009-573 (S.B. 974) ("Consumer Economic Protection Act of 2009") (effective October 1, 2009). It provides in full:

7

## § 58-70-15. Definition of collection agency and collection agency business

(a) "Collection agency" means a person directly or indirectly engaged in soliciting, from more than one person delinquent claims of any kind owed or due or asserted to be owed or due the solicited person and all persons directly or indirectly engaged in the asserting, enforcing or prosecuting of those claims.

(b) "Collection agency" includes any of the following:

(1) Any person that procures a listing of delinquent debtors from any creditor and that sells the listing or otherwise receives any fee or benefit from collections made on the listing.

(2) Any person that attempts to or does transfer or sell to any person not holding the permit prescribed by this Article any system or series of letters or forms for use in the collection of delinquent accounts or claims which by direct assertion or by implication indicate that the claim or account is being asserted or collected by any person, firm, corporation, or association other than the creditor or owner of the claim or demand.

(3) An in-house collection agency, whereby a person, firm, corporation, or association sets up a collection service for his or its own business and the agency has a name other than that of the business.

(4) A "debt buyer." As used in this subdivision, the term "debt buyer" means a person or entity that is engaged in the business of purchasing delinquent or charged-off consumer loans or consumer credit accounts, or other delinquent consumer debt for collection purposes, whether it collects the debt itself or hires a third party for collection or an attorney-at-law for litigation in order to collect such debt.

(c) "Collection agency" does not mean:

(1) Regular employees of a single creditor;

(2) Banks, trust companies, or bank-owned, controlled or related firms, corporations or associations engaged in accounting, bookkeeping or data processing services where a primary component of such services is the rendering of statements of accounts and bookkeeping services for creditors;

(3) Mortgage banking companies;

(4) Savings and loan associations;

(5) Building and loan associations;

(6) Duly licensed real estate brokers and agents when the claims or accounts being handled by the broker or agent are related to or are in connection with the broker's or agent's regular real estate business;

(7) Express, telephone and telegraph companies subject to public regulation and supervision;

(8) Attorneys-at-law handling claims and collections in their own name and not operating a collection agency under the management of a layman;

(9) Any person, firm, corporation or association handling claims, accounts or collections under an order or orders of any court;

> (10) A person, firm, corporation or association which, for valuable consideration purchases accounts, claims, or demands of another, which such accounts, claims, or demands of another are not delinquent at the time of such purchase, and then, in its own name, proceeds to assert or collect the accounts, claims or demands;
> (11) Any person attempting to collect or collecting claims, in that person's name, of a business or businesses owned wholly or substantially by that person;
> (12) Any nonprofit tax exempt corporation organized for the purpose of providing mediation or other dispute resolution services; and
> (13) The designated representatives of programs as defined by G.S. 110-129(5).

N.C. Gen. Stat. § 58-70-15. The remainder of Part 1 sets forth other requirements for issuance of a permit and maintenance of a license as a collection agency in North Carolina, including a bond requirement, a record of business in the state, license application fees, identification requirements, and other permit requirements, as well as procedures for hearings on an application and procedures and grounds for revocations of permits. § 58-70-20 through § 58-70-50.

Part 2 sets forth operating procedures of a duly licensed collection agency. See § 58-70-55 to -85. Part 3 sets forth "prohibited practices by collection agencies engaged in the collection of debts from consumers," and it contains a definition section that provides meanings of terms "[a]s used in this Part," including "Consumer" and "Debt," as discussed further below. In addition, Part 3 sets forth unfair practices and other deceptive conduct prohibited by the act, including provisions amended by the Act in 2009. See §58-70-95 to -125; 2009 North Carolina Laws S.L. 2009-573 (S.B. 974) (effective October 1, 2009). Finally, Part 4 sets forth civil penalties for violation of Part 3, see § 58-70-130, and Part 5 sets forth requirements for legal actions by collection agencies. See § 58-70-145 to -155.

9

Because defendants contend that several different parts of the definition of "collection agency" set forth in Part 1 of Article 70 apply to plaintiff, the court will analyze each in turn below.

### a. "Debt Buyer"

Defendants contend that plaintiff is a "debt buyer" under § 58-70-15(b)(4). See Counterclaims ¶¶ 25, 57. As noted above, a "debt buyer" is defined as "a person or entity that is engaged in the business of purchasing delinquent or charged-off consumer loans or consumer credit accounts, or other delinquent consumer debt for collection purposes, whether it collects the debt itself or hires a third party for collection or an attorney-at-law for litigation in order to collect such debt." § 58-70-15(b)(4). Plaintiff argues that it is not a "debt buyer" because the debt at issue in this case is not a "consumer loan," "consumer credit account," or "other delinquent consumer debt," but rather a commercial, business loan, for purposes of real estate development, and that the definition of "debt buyer" should not be read expansively to cover debts of such a nature. Defendants contend, by contrast, that the term "consumer debt" should be read expansively, based on the definition of "consumer" set forth in Part 3 of Article 70, such that it includes debt incurred by any business entity such as Lichtin/Wade L.L.C., the notemaker in this instance.

The phrase "consumer debt" is not defined in § 58-70-15, or Part 1 of Article 70. Accordingly, the court must be give the words "their common and ordinary meaning unless another is apparent from the context, or unless they have acquired a technical significance," Duke Power Co., 274 N.C. at 510, and the court may consult a dictionary in doing so. See id. (citing Webster's Third New International Dictionary (1964)). As defined by Black's Law Dictionary, "consumer debt" means "[a] debt incurred by someone primarily for a personal, family, or household purpose." Black's Law Dictionary (9th ed. 2009) (definition of "debt"). Further, "consumer" is defined as "[a]

10

person who buys goods or services for personal, family, or household use, with no intention of resale; a natural person who uses products for personal rather than business purposes." Id.

Based on this common and ordinary meaning of the terms, the court finds that the guaranties at issue in this case are not "consumer debt." As pleaded in the counterclaims, Lichtin/Wade L.L.C. is a real estate company that "owns two office buildings known as Wade I and Wade II, plus approximately 12 acres of vacant land upon which . . . additional office buildings may be constructed," and Lichtin/Wade L.L.C. has plans for "constructing three additional office buildings at the site. Counterclaim ¶8. As part of its real estate business, Lichtin/Wade entered into four commercial loans for the purpose of "constructing class A office building and parking deck," "refinancing . . . development funds for 20.2 acres of commercial property," and "for funding tenant improvement costs." See id. at ¶ 10 (incorporating Compl., Ex. A-1, B-1, C-1, D-1). Mr. Lichtin and the Lichtin Family Limited Partnership guaranteed these commercial loans. See id. (incorporating Compl. Exs E-1 to E-8).

In light of the alleged purpose of the loans, the court readily concludes that the guaranties are not consumer debts because they are not incurred for personal, family or household purposes, but rather for business purposes of commercial real estate development. Accordingly, where these are the only loans ERGS allegedly has purchased, the counterclaims provide no factual basis for inferring that ERGS is a "debt buyer," under § 58-70-15.

Defendants argue, however, that the definition of "debt buyer" in § 58-70-15(b)(4) should be informed by the broad definitions of "debt" and "consumer" set forth in § 58-70-90, such that the Lichtin/Wade LLC loans, and the guaranties, should be considered to be "consumer debt." (See Counterclaim ¶ 24; Opp. Br. at 13-15). Section 58-70-90, which is in Part 3 of the statute, states:

11

> As used in this Part, the following terms have the meanings specified:
> (1) 'Collection agency' means a collection agency as defined in G.S. 58-70-15 which engages, directly or indirectly, in debt collection from a consumer.
> (2) 'Consumer' means an individual, aggregation of individuals, corporation, company, association, or partnership that has incurred a debt or alleged debt.
> (3) 'Debt' means any obligation owed or due or alleged to be owed or due from a consumer.

§ 58-70-90. Defendants argue that they plainly fall under the definition of "consumer," and as such the guaranties fall within the meaning of "consumer debt" in § 58-70-15(b)(4). The court disagrees.

As an initial matter, where section 58-70-90 states that, "as used in this Part," the terms "consumer" and "debt" have the definitions specified, those definitions properly are limited to usage in that Part of the statute. Even assuming, however, that the court can consider the Part 3 definitions of "consumer" and "debt" in interpreting the meaning of "consumer debt" in Part 1, several principles prevent the court from using those Part 3 definitions to broaden the well-established common meaning of "consumer debt" to the point urged by defendants here.

First, the definitions in § 58-70-90 are circular. Reading the definitions together, "consumer debt" literally is defined as "an individual, aggregation of individuals, corporation, company, association, or partnership that has incurred" "any obligation owed or due or alleged to be owed from" "an individual, aggregation of individuals, corporation, company, association or partnership that has incurred" "any obligation owed or due or alleged to be owed or due from . . ." and so on in an infinite loop. § 58-70-90. "[W]here a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded." Mazda Motors v. Southwestern Motors, 296 N.C. 357, 361 (1979) (citations omitted).

12

Second, using solely the definitions in Part 3 to define the phrase "consumer debt" in Part 1 renders the term "consumer" redundant surplusage. If a "debt" is "any obligation owed or due or alleged to be owed or due from a consumer," then there would be no need for the legislature to use the term "consumer" in front of "debt" in the definition of "debt buyer" in § 58-70-15. "It is presumed that the legislature intended each portion to be given full effect and did not intend any provision to be mere surplusage." Elec. Supply Co., 328 N.C. at 656. In light of this principle, "consumer" in the phrase "consumer debt" in § 58-70-15 must have a more specific meaning that avoids rendering the term "consumer" surplusage.

In particular, the defining characteristic of a consumer, as ordinarily understood, is not the type of person, but rather the type of activity engaged by such person. See Black's Law Dictionary (9th ed. 2009) (defining consumer as one "who buys goods or services for personal, family, or household use," or who "uses products for personal rather than business purposes"). And, when used as part of the phrase to modify "debt," consumer naturally takes on a meaning based on the purpose for which the debt was incurred, not dependent on the type of entity involved. See id. (stating that "consumer debt" is a "debt incurred by <u>someone</u> primarily for a personal, family, or household purpose") (emphasis added). Thus, the more specific definition of "consumer debt" in § 58-70-15 can be harmonized with the more general definition of "consumer" in § 58-70-90 because the definition in § 58-70-90 addresses only the type of entity that can be considered a consumer under the statute, while remaining silent as to the nature of activity that is critical for defining a consumer. See Elec. Supply Co., 328 N.C. at 656 (statutory language must be construed "in a manner which harmonizes with the underlying reason and purpose of the statute").

13

Third, given that "consumer debt" in § 58-70-15 is a more specific term than "consumer" in § 58-70-90, the specific statutory phrase should not be rendered meaningless by the more general and circular definitions in § 58-70-90. See Nat'l Food Stores v. N. Carolina Bd. of Alcoholic Control, 268 N.C. 624, 628-29 (1966) ("Where there is one statute dealing with a subject in general and comprehensive terms, and another dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, with a view to giving effect to a consistent legislative policy; but, to the extent of any necessary repugnancy between them, the special statute, or the one dealing with the common subject matter in a minute way, will prevail over the general statute . . . .").

Finally, if the legislature had intended to alter the common ordinary meaning of "consumer debt" by removing any distinction between a debt for "personal, family, or household purpose," it could have done so more explicitly in defining "consumer" and "debt" in Part 3 of Article 70. For example, it could have made those definitions expressly applicable to all Parts in Article 70. In addition, it could have specified, to clear up the ambiguity in the circular definition, that for purposes of Article 70, consumer debt includes not only debt for "personal, family, or household purposes" but also for "business or commercial purposes." It did not do so, however, and it is not the province of the court to presume that the legislature intended to replace, by implication only, the common ordinary meaning of the phrase "consumer debt" with a unprecedented meaning directly contrary to that ordinary meaning. See State ex rel. Com'r of Ins. v. N. Carolina Auto. Rate Admin. Office, 294 N.C. 60, 68 (1978) ("In construing statutes courts normally adopt an interpretation which will avoid absurd or bizarre consequences, the presumption being that the legislature acted in accordance with reason and common sense and did not intend untoward results.").

In sum, plaintiff is not a "debt buyer" under the Act because the loans at issue in this case are not "consumer loans" "consumer credit accounts," or other "consumer debt." § 58-70-15.

### b. Third-party "collection agency"

Defendants also contend that "plaintiff and its affiliates are non-exempt collection agencies" under § 58-70-15(a) because they "acted in concert to solicit, acquire, and thereafter prosecution of the collection of the Lichtin/Wade Loans which were delinquent at the time they were acquired." As defined in § 58-70-15(a), a "collection agency" means:

> a person directly or indirectly engaged in soliciting, from more than one person delinquent claims of any kind owed or due or asserted to be owed or due the solicited person and all persons directly or indirectly engaged in the asserting, enforcing or prosecuting of those claims.

N.C. Gen. Stat. § 58-70-15(a). Plaintiff does not fall under this definition because plaintiff purchased and now owns the guaranties; a collection agency under § 58-70-15(a) does not own the claim it asserts but rather asserts someone else's claim (i.e. those claims of "the solicited person"). Further, plaintiff is not alleged to have solicited BB&T to collect the guaranties, or alleged now to be collecting "those claims" of BB&T. Because plaintiff purchased the loans, the claims are no longer BB&T's claims. For these two reasons, whether plaintiff is alleged to have acted in concert with "its affiliates" has no bearing on the applicability of § 50-70-15(a), because plaintiff is the owner of the debt and is not alleged to have solicited another person for purposes of collecting that person's debt.

### c. In-House "collection agency"

Defendants also argue that plaintiff is an "in-house collection agency" described in § 58-70-15(b)(3). Under the statute, however, an "in-house collection agency" refers to a "person,

15

firm, corporation or association [that] sets up a collection service for his or its own business and the agency has a name other than that of the business." § 58-70-15(b)(3). As with the previous provision, plaintiff is not an "in-house collection agency" because plaintiff purchased and now owns the guaranties. Thus plaintiff is not enforcing these guaranties on behalf of another company, and it has brought suit in its own name, not as an agency on behalf of another entity.

Defendants nonetheless argue that Goldman Sachs, Archon Group, and others, are "affiliates" of plaintiff, and that plaintiff and its affiliates, collectively, have engaged in collection activities by soliciting and acquiring delinquent debts. See Mem. in Opp. at 8-9. As an initial matter, beyond the single transfer to plaintiff of the BB&T loans and guaranties here, defendants have alleged no facts supporting the assertion that plaintiff has acted in concert with its affiliates in debt collection activities. Compare Counterclaims ¶¶ 12, 22 with ¶¶ 18-21. Indeed, defendants sought further discovery to bear out this theory of relief. See Mem. in Opp. at 8-9.

In any event, defendants' assertion that plaintiff is an affiliate of Goldman Sachs, Archon Group, and others, who collectively engage in collection activities, is not enough to qualify plaintiff as an "in-house collection agency." Regardless of its relationship with the other entities, and regardless of the activities of those other entities, plaintiff itself purchased and owns the guaranties, and has brought suit in its own name. If Goldman Sachs, or some other entity, was in fact acting as an "in-house collection agency" for plaintiff with respect to the debt at issue, they, not plaintiff, would be the entity bringing suit or making demands of defendants for payment under the guaranties. As they did not do so, there is no basis for the assertion that plaintiff, or any of its affiliates, is acting as an "in-house collection agency" for the other.

16

In sum, where defendants do not allege any facts tending to show that plaintiff qualifies as a "collection agency" under § 58-70-15, plaintiff is not subject to the requirements and prohibitions of Article 70, which form the basis of defendants' first counterclaim. In addition, where the second counterclaim is based on the same alleged violations of requirements and prohibitions in Article 70, see Counterclaims, ¶¶ 69-70, the second counterclaim must be dismissed on the same basis. (See Mem. in Sup. at 12; Opp. at 8). Accordingly, plaintiff's motion to dismiss is granted and defendants' counterclaims are dismissed.

### 2. Motion to Strike

The parties concur that if the counterclaims are dismissed for lack of applicability of Article 70 then the affirmative defense should be dismissed as well. (See Mem. in Sup. at 12; Opp. at 5 n.1). Accordingly, based on the analysis above with respect to the counterclaims, plaintiff's motion to strike will be granted.

### C. Motion for extension and case scheduling

Upon review of the motion for extension of time, upon good cause shown, the motion is granted. Defendants shall have up to and including May 10, 2012, as requested, to complete the limited discovery set forth in defendants' motion. In light of the court's ruling on the motion to dismiss and motion to strike, and given the further extension of time requested to complete discovery, where plaintiff seeks opportunity to "update the outstanding indebtedness figures as necessary or requested by the Court to resolve the motion" for summary judgment (Opp. to M. Ext. Time at 3-4), plaintiff may supplement said motion with this information on or before April 4, 2013. Defendants' consolidated response to the motion for summary judgment, as supplemented, shall be due June 7, 2013, and reply, if any, by plaintiff, shall be due June 21, 2013.

17

## CONCLUSION

Based on the foregoing, plaintiff's motion to dismiss and motion to strike (DE 31) are GRANTED. Counterclaims asserted by defendants are DISMISSED, and defendants' first affirmative defense is STRICKEN. Defendants' motion for extension of time is GRANTED, and defendants shall have up to and including May 10, 2012, to complete the limited discovery set forth in defendants' motion. Plaintiff may clarify the dollar amount of the award sought in judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on or before April 4, 2013. Defendants' consolidated response to the motion for summary judgment, as supplemented, shall be due June 7, 2013, and reply, if any, by plaintiff, shall be due June 21, 2013.

SO ORDERED this the 27TH day of March, 2013.

_____
LOUISE W. FLANAGAN
United States District Judge